IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

MAY -1 2024

JEFFREY P. COLWELL
CLERK

Civil Action No. _____

MICHAEL S. FREEMAN II,

Plaintiff,

v.

ELIZABETH EPPS, in her individual capacity;
REP. ELIZABETH EPPS, in her official capacity as a state Representative
of the Colorado General Assembly; and
PHILIP J. WEISER, in his individual capacity

Defendants.

---

## COMPLAINT AND JURY TRIAL DEMAND

---

Michael Scott Freeman II (herein referred to as "Plaintiff" or "Mr. Freeman") by and through undersigned litigation, hereby submits this Complaint and Jury Demand against the above-named Defendants, alleges as follows:

### NATURE OF THE ACTION

This is an action alleging violations of the First Amendment enforceable on the states through the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution requesting injunctive and monetary relief from Defendants Elizabeth Epps and Philip J. Weiser in their individual capacities. This Complaint also requests *Quo Warranto* relief in the form of the disqualification of Rep. Elisabeth Epps from holding public office due to her failure to maintain the necessary qualifications.

## PRO SE PLEADING

Because the Plaintiff represents himself in this matter, the court must afford his filings a liberal construction. See *Haines v. Kerner, 404 U.S. 519, 520-21 (1972)*. Liberal construction "means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991)*. [...] The court plays a neutral role in the litigation process and cannot assume the role of an advocate for the *pro se* party. *Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 672 (10th Cir. 1998)*."

In *Picking v. Pennsylvania Railway, (151 F2d. 240) (3rd Cir.)*, the plaintiffs civil rights pleading was 150 pages and described by a federal judge as 'inept'[...] Nonetheless, it was held that "where a plaintiff pleads pro se in a suit for the protection of civil rights the court should endeavor to construe the plaintiff's pleading without regard for technicalities."

Plaintiff humbly requests that this Court keep in mind that "Pleadings are intended to serve as a means of arriving at fair and just settlements of controversies between litigants. They should not raise barriers which prevent the achievement of that end.[...] Proper pleading is important, but its importance consists in its effectiveness as a means to accomplish the end of a just judgment." *Maty v. Grasselli Chemical Co., 303 U.S. 197 (1938)*

**JURISDICTION AND VENUE**

This action arises out of a failure in the above-named Defendants to comply with established requirements of the First Amendment enforceable upon the states through the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution resulting in the deprivation of the Plaintiff's First Amendment rights. Thus, jurisdiction exists under 28 U.S.C. §§ 1331, 1343(a)(3) and (a)(4), and 42 U.S.C. § 1983.

This action concurrently requests a Writ of *Quo Warranto* barring Rep. Epps from holding public office. Thus, jurisdiction for this action also exists under 28 U.S. Code § 1651 through 28 U.S.C. § 1343 to enforce § 3 of the Fourteenth Amendment.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) because this action arises under the United States Constitution. The "collateral order" doctrine of *Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541 (1949)* as raising a "serious and unsettled question" of law also applies.

All parties are residents of Colorado.

Pursuant to 5 U.S.C. § 703 and 28 U.S.C. § 1391(b)(2), the proper venue for this action is the U.S. District Court for the District of Colorado – Denver Division because the actions and non-actions alleged against the Defendants occurred in and around the Denver metropolitan area.

All procedural prerequisites for filing this lawsuit have been met. Plaintiff notified the Defendants of the intent to file this action on multiple occasions—to include informing Rep. Epps of his intention to pursue her disqualification from

holding public office.

## INDIVIDUAL VS. OFFICIAL CAPACITY DISTINCTION

Sovereign Immunity does not prevent Plaintiff from suing government officials in their individual capacity when they violate the Constitution--This is because they are not acting on behalf of the state in this situation. *Ex parte Young, 209 U.S. 123 (1908)*. The government has no "'discretion' to violate the Federal Constitution; its dictates are absolute and imperative." *Owen v. City of Independence, 445 U.S. 622 (1980)*.

The above-mentioned case law citations are the reason the Defendants are being sued in their individual capacities. Representative Epps (official capacity) is also named in this suit due to statements made in her individual capacity, rendering her ineligible for public office. Because of these crucial distinctions, the naming conventions within this Complaint must specify each Defendant accordingly.

- "Elizabeth Epps" or "Mrs. Epps" will be used to denote her in her individual capacity.
- "Rep. Epps" or "Rep. Elisabeth Epps" will be used to denote her in her official capacity as a state Representative for the state of Colorado.
- "Philip Weiser" or "Mr. Weiser" will be used to denote him in his individual capacity.
- The Attorney General for the State of Colorado (in his official capacity) is not named in this suit.

Any attempt to involve state resources in this suit for any matter extending outside Rep. Epps' qualification for office should be construed as a waiver of

sovereign immunity for the state of Colorado and the state should be enjoined. Should such an event occur, Plaintiff should be granted leave to file a new complaint to incorporate the state and Attorney General Weiser accordingly.

## GENERAL ALLEGATIONS

1. On or about April 12th, 2024, Rep. Epps made the following post from an account (@elisabethepps) on X (formerly known as Twitter):



**elisabeth epps** @elisabethepps · 2d
📌 if you support banning assault weapons, please pause before berating any Dem who doesn't vote Yes on 1292.

Some No votes are from honest upfront Dems with integrity.

vs Some Yes voters sabotage my work, scheming with Rs to kill D bills.

be aware. A vote is just 1 data point.

💬 44    🔁 4    ♡ 52    📊 7.2K

2. On or about April 12th, 2024, Plaintiff responded from his X account (@TheAntiGrifter) by stating, "Some Dems respect the Constitution and some Dems don't."

3. On or about April 13th, 2024, Mrs. Epps replied to Plaintiff's response by stating,

> *"I didn't make a non-negotiable death pact with a*
>
> *piece of parchment written by men who owned humans.*
>
> *some of us read, think, analyze for ourselves. others*
>
> *prefer unflinching fealty to document premised on my*
>
> *people being property.*[1]
>
> *c'est la vie."*

A screenshot of this exchange is provided here:



4.  The exchange between Plaintiff and Mrs. Epps continued and Mr. Freeman

responded with the following;

> *"Elisabeth, the Constitution is supposed to prevent you*
>
> *from abusing the rights of Americans. Whether or not*
>
> *the founding fathers fit today's definition of moral is*
>
> *irrelevant.*
>
> *However, I do appreciate your candidness in admitting*
>
> *your lack of honesty in taking that oath."*

---

1)      Its fairly evident that Mrs. Epps either never read the U.S. Constitution or her interpretation of it is severely distorted. The original constitution took a very neutral stance on slavery and like most things delegated that issue down to the states. While a greater conversation should be had as to the disagreement with the practice of slavery that many of the founding fathers had, the nature of compromise (to include the 3/5ths Compromise), and the social environment that existed when the original Constitution was written, the notion that the entire Constitution was premised on slavery is preposterous.  Moreover, the Constitution has since been amended via the Thirteenth Amendment to free the slaves—to ignore this means a person must be viewing the Constitution as only existing in its original form, further cementing Mrs. Epps' ignorance of this matter.

5. Mrs. Epps then responded by stating the following:

"'Michael'[2], Enjoy pontificating into the void and/ or trolling elsewhere. The rest of us will keep engaging in good faith while you make random lie-filled pronouncements about morality I didn't mention and about oaths you didn't watch.[3] Take good care."

Here is a screenshot of that exchange:



6. Mr. Freeman was going to respond to Mrs. Epps' reply however she had blocked him before he was able to do so.

7. Mr. Freeman promptly emailed Rep. Epps at

(elisabeth.epps.house@coleg.gov) asking for her to unblock him on X in

compliance with the First Amendment. A few hours after sending that email, the

Plaintiff received a response from an email address using the domain name of

Mrs. Epps' campaign website (ehe@elisabethepps.com)[4] wherein she stated the

following:

> "Good morning.
>
> For the time being, Rep. Epps' primary public +
>
> legislator account on the site formerly known as
>
> Twitter is @RepEpps. Her primary personal +
>
> campaign account is @ElisabethEpps.
>
>
> We will review your request within 30 days and seek to
>
> determine if you were blocked, and if you were
>
> blocked in error, in which case we would address that
>
> accordingly. If not, we will attempt to communicate
>
> that as well.

---

2)       This seems to be Mrs. Epps alluding to the idea that Plaintiff is not who he presents as online, which couldn't be further from the truth.
3)       This statement hints at the notion that Mrs. Epps never took the oath to support the U.S. Constitution as required by state law. Discovery should be allowed to determine if and when Mrs. Epps took her oath to support the U.S. Constitution in compliance with *Article V, Sec. 2, Para. 2 of the Colorado Constitution*.
4)       Mrs. Epps' initials are E.H.E which coincidentally matches the email address responding to Mr. Freeman's email to Rep. Epps. According to www.coloradocapitolwatch.net, this account appears to belong directly to Mrs. Epps, therefore it is likely that it was Mrs. Epps that wrote this email and the "we"/"her"/third person manner in which the email is written may be some attempt at a strange legal maneuver. Discovery should be allowed to determine who wrote and sent this email.

> *As for your admonition re: "do not think…", indeed, we*
> *do not think anything either way about your potential*
> *litigation, and wish you good luck with that endeavor.*
> *We appreciate the process of accessing the court*
> *system to redress issues of concern as being*
> *paramount, and we will follow any appropriate court*
> *orders directed to Rep. Epps."*

8. In the Colorado House of Representatives legislative debate that occurred on April 14th, 2024, at least two of Rep. Epps' colleagues referenced Mrs. Epps' "piece of parchment" comment referencing the U.S. Constitution in their arguments against HB24-1292. Within her own arguments in favor of the bill, Rep. Epps' responded to them and admitted that she made the post in question.[5]

9. On or about April 15th, 2024, Mr. Freeman responded to the above-email informing her that 30 days is an unreasonable amount of time to make these determinations and informing her about the Supreme Court case *Lindke V. Freed* and its application to state elected officials blocking social media critics. No response was received.

10. On or about April 17th, 2024, Mr. Freeman wrote an email to the Speaker of the House for the General Assembly, Julie McCluskie with Rep. Epps copied on that email requesting assistance with getting unblocked and informing her about the application of *Lindke V. Freed* to state elected officials. No response was received.

11. On or about April 19th, 2024, Mr. Freeman wrote an email to Colorado's Attorney General requesting assistance with getting unblocked and pointing out

that the Colorado Attorney General's website declares that the Attorney General is the "People's Lawyer". Mr. Freeman also informed the Colorado Attorney General of the *Lindke V. Freed* case and its applicability to these circumstances and of his intent to include the state of Colorado in the litigation against Rep. Epps. Mrs. Epps and Julie McCluskie were copied on that email. No response was received.

12. On or about April 22nd, 2024, Mr. Freeman sent another email to Mr. Weiser and Rep. Epps notifying them that he studied some of the applicable case law over the weekend and was not going to include the state of Colorado in this litigation, but instead Philip Weiser in his individual capacity and reasserting his intention to sue them over this matter. No response was received from any recipient of that email.

## DISCUSSION

### A. Courts' Reliance on Executive Branch to Enforce Decisions.

13. Court decisions are not self-enforcing. *"The judicial branch decides the constitutionality of federal laws and resolves other disputes about federal laws. However, judges depend on our government's executive branch to enforce court decisions."*[6]

14. The Colorado Attorney General's office is part of the executive branch and has an inherent responsibility to assist in enforcement of judicial decisions. In addition to the Colorado AG considering himself to be the "People's Lawyer"[7], the Colorado Department of Law purports to be focused on "Upholding the United States and Colorado Constitutions."

15. Mr. Weiser has opted not to facilitate that responsibility in defiance of the Colorado Attorney General's dictate and his oath to support the U.S. Constitution

which resulted in this litigation that could have easily been avoided with even the most paltry amount of assistance from the Colorado Attorney General.

**B. Injunction**

16. A preliminary Injunction is warranted when a Plaintiff shows the following elements:

- They were likely to prevail on the merits.

- They would suffer irreparable harm without an injunction.

- The harm they would suffer without an injunction outweighs the harm that the preliminary injunction may cause the opposing party.

- The injunction would not adversely affect the public interest.

    *Winter v. Natural Resources Defense Council, 555 U.S. 7 (2008) ((10th Cir. Oct. 27, 2016)) Resolution Trust Corp. v. Cruce, 972 F.2d 1195, 1198 (10th Cir.1992).*

17. **Merits –** In *Lindke V. Freed*, The Supreme Court made the unanimous decision pertaining to public officials blocking social media critics online that to prevail a litigant must show that the official (1) had actual authority to speak on behalf of the State on a particular matter, and (2) purported to exercise that authority in the relevant posts. Plaintiff will address these elements respectively.

---

5)       "Colorado House 2024 Legislative Day 096", https://www.youtube.com/watch?v=u_RbdEty0WE (Rep. Epps' called to the speaking podium to begin her arguments ~5:33:00)
6)       https://www.uscourts.gov/about-federal-courts/court-role-and-structure
7)       https://coag.gov/#:~:text=Colorado%20Attorney%20General%20Phil%20Weiser,and%20promoting%20justice%20for%20all

18. To refresh the Court's memory, the original post that Mr. Freeman responded to:

> **elisabeth epps** @elisabethepps · 2d
> 📣 if you support banning assault weapons, please pause before berating any Dem who doesn't vote Yes on 1292.
>
> Some No votes are from honest upfront Dems with integrity.
>
> vs Some Yes voters sabotage my work, scheming with Rs to kill D bills.
>
> be aware. A vote is just 1 data point.
>
> 💬 44   🔁 4   ♡ 52   📊 7.2K   🔖   ⬆️

(1) AUTHORITY - As a state representative, Rep. Epps undoubtedly possesses the authority to speak on behalf of the state in regard to a bill being voted on in Colorado's House of Representatives. Moreover, Rep. Epps is one of the Prime Sponsors of HB24-1292.

(2) EXERCISE OF AUTHORITY – Rep. Epps states that some of the "yes" votes from House Democrats sabotage *her* work ("Some Yes voters sabotage *my* work".) By using the possessive word "my" she **must** be referencing her bill as a Representative because her personal/campaign work cannot be "sabotage[d]" from votes on the House floor. As a prime sponsor of HB24-1292, this is the only interpretation that makes sense.

19. The remainder of the conversation leading to Mr. Freeman being blocked by Mrs. Epps pertains to the U.S. Constitution and her oath of office, which undoubtedly pertains to Rep. Epps' official capacity.

20. For these reasons, the Plaintiff has a high likelihood of victory on the merits.

21. **IRREPARABLE HARM –** This case pertains to the First Amendment and

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns, 427 U.S. 347 (1976) referencing New York Times Co. v. United States, 403 U. S. 713 (1971).*

22. **HARM WITHOUT INJUNCTION** – The @elisabethepps account that Mr. Freeman is blocked from commenting on frequently posts about official state government matters and this block is preventing Mr. Freeman from using his First Amendment rights to remain a part of the discussion that occurs under those posts. It will take less than two minutes for Mrs. Epps to unblock Mr. Freeman and thus causes her no harm. All she needs to do is click "Settings and Support", then "Settings and Privacy", then "Privacy and safety", then "Mute and block", then "blocked accounts", and lastly find Mr. Freeman's account (@TheAntiGrifter) and click the "Blocked" button next to his name to unblock him.

23. **IMPACT TO PUBLIC INTEREST** – Mr. Freeman is politically independent and a staunch advocate for constitutional rights and rational legislation. Legislators that act with little to no regard to the constitutional rights of their constituents are the greatest threat to the Americans' livelihoods—far exceeding the threat from a terror cell or adversarial nation at our current state.

24. Legislators hate hearing that the laws they are trying to pass are unconstitutional and/or illogical, so they crave an echo chamber (or 'safe space') where they can spew propaganda and tout absurd bills without facing criticism from the public. It's very simple; We have a First Amendment right for a reason, so if legislators don't like criticism from the public, then they should stop publishing their legislative efforts on social media, ignore the critics, stop pushing bad laws, or leave the profession altogether. Quite frankly, because of her disregard to the

Constitution she swore to uphold, Rep. Epps should take the fourth option.

25.  Rational people don't like bad legislation and we have every right to voice our dissent in any manner protected under the First Amendment of the U.S. Constitution. In addition to violating the Free Speech provision of the First Amendment, social media critics are arguably engaging in a form of digital protest that should also be protected by the First Amendment peaceful assembly grounds as well.

26.  For these reasons, the public interest is only benefited by Mr. Freeman's responses to Mrs. Epps.

### C.  Quo Warranto

27.  "A writ of quo warranto is a common law remedy which is used to challenge a person's right to hold a public or corporate office[...] When bringing a petition for writ of quo warranto, individual members of the public have standing as citizens and taxpayers."[8] 28 U.S.C 1343 (a)(4)[9] and 42 U.S.C. § 1983 supplement this status.  Standing is also maintained through Article II, Section 1 and Article II, Section 24 of the Colorado Constitution.[10, 11]

28.  Article V, Sec. 2, Para. 2 of the Colorado Constitution requires members of the Colorado General Assembly to take an Oath prior to entering office.

29.  Plaintiff again provides a screenshot of Mrs. Epps' Twitter post to the Court for convenience:




**elisabeth epps**
@elisabethepps

"Michael", Enjoy pontificating into the void and/
or trolling elsewhere. The rest of us will keep
engaging in good faith while you make random
lie-filled pronouncements about morality I didn't
mention and about oaths you didn't watch.
Take good care.

2:49 AM · 4/13/24

30. As pointed out in a footnote earlier, the "oaths you didn't watch" clause of her post hints at the idea that she never took the oath. As part of discovery, Rep Epps should be made to provide proof that she took an oath in accordance with the Colorado Constitution prior to entering office. If she never took the oath, then she is not qualified to hold public office in any capacity that requires allegiance to the U.S. Constitution.

31. *If she did* take an oath, then the sincerity of that oath must be called into question based on her *own* words. Furthermore, if she did take an oath, then § 3 of the Fourteenth Amendment is also relevant.




**elisabeth epps**
@elisabethepps

I didn't make a non-negotiable death pact with
a piece of parchment written by men who
owned humans.

some of us read, think, analyze for ourselves.
others prefer unflinching fealty to document
premised on my people being property.

c'est la vie.

2:16 AM · 4/13/24 From Earth · **4.8K** Views

---

8)      https://www.law.cornell.edu/wex/quo_warranto
9)      28 U.S.C 1343 (a)(4) – "…to secure equitable **or other relief under any Act of Congress** providing for the protection of civil rights," [Bold for emphasis].
10)     "*Vestment of political power.* All political power is vested in and derived from the people; all government, of right, originates from the people, is founded upon their will only, and is instituted solely for the good of the whole." https://law.justia.com/constitution/colorado/cnart2.html
11)     "*Right to assemble and petition.* The people have the right peaceably to assemble for the common

good, and to apply to those invested with the powers of government for redress of grievances, by petition or remonstrance." https://law.justia.com/constitution/colorado/cnart2.html

In this post she diminishes both the oath of office and the Constitution. Merriam-Webster's defines the word "rebellion" as "opposition to one in authority or dominance." The U.S. Constitution is the "Supreme Law of the United States". Her statement here is a clear opposition to that authority, and accordingly, she should be barred from holding any public office requiring an allegiance to the same in accordance with the Fourteenth Amendment.

32. As stated in Mr. Freeman's response to her post; the morals of the founding fathers are irrelevant to her alleged oath to uphold the U.S. Constitution. In her post she fails to understand that the Constitution establishes the legislature and imparts rights to Americans that the legislature is supposed to adhere to. Referring to it as a "piece of parchment" in the manner she did is an incredibly degrading statement to make about a document she allegedly swore to uphold. This statement makes sense when reading the next sentence wherein she declares that "*others* prefer unflinching fealty" to it—Please note that she considers herself to be in the group that "read[s], think[s], analyze[s]" for herself by using the word "us", but "others" (not including her) prefer the unflinching fealty.

33. In the aforementioned House debate in favor of HB24-1292 that occurred on April 14[5], she does not deny making this statement, but places emphasis on the fact that her alleged oath wasn't a "death pact". This argument does not assist her, because her statement still stands as a clear diminishment (i.e. 'opposition', 'rebellion', etc.) of the alleged oath that she made to support the Constitution.

34. Mrs. Epps' personal opinions as to the U.S. Constitution resulted in the deprivation of Mr. Freeman's First Amendment rights, as a government official with

no respect for the Constitution would, consequently, not respect the rights it bestows upon the public.

35. For these reasons, she has violated her alleged oath. If she has not taken an oath, then she should not be holding her seat.

### D. Damages

36. Plaintiff seeks a Jury Trial to determine the following damages:

### (1) Economic Damages

(a) Reimbursement of all Court Filing Fees (to include any appeals)

(b) Reimbursement for USPS Priority Mail Flat Rate Shipping $9.85 to mail the Complaint to the Court.

(c) Reimbursement for inevitable USPS Priority Mail Flat Rate shipping ($9.85) with Certified Mail ($4.40) and Electronic Return Receipt ($2.32) to mail the summons and Complaint both Defendants.

(d) Any future mailing costs that prove necessary to achieve justice in this case.

### (2) Compensatory Damages

(a) Plain and Suffering in the amount of $14.42 (Colorado's minimum wage) per hour of labor it takes to fight this case. Producing this Complaint took approximately 25 hours resulting in a cost of $360.50 as of the filing of this Complaint.

(b) Pain and Suffering for an additional amount for mental stress to be determined by the Jury.

### (3) Punitive Damages

(a) This Complaint would not be necessary had Mrs. Epps' taken two

minutes to unblock Mr. Freeman from her X account. Instead she opted to violate Mr. Freeman's First Amendment rights in a flagrant violation of the law, consuming Mr. Freeman's and the Court's time. Mr. Weiser's negligence to intervene prior to the filing of this suit should also be assessed and Punitive Damages should be assessed accordingly.

### E.  Considerations for Higher Courts

**\*\*District Court Judges and Defendants please skip to page 24 of this filing.\*\***

Plaintiff understands that there is a high degree of chance that this case will need to be heard by the U.S. Supreme Court for a complete resolution. For this reason, the Plaintiff wishes to include this candid statement directly to those higher courts:

Mr. Freeman does possess the intelligence, aptitude, and receptive skills to become an attorney—and has previously sought to become one—however, what he doesn't have is the temperament to deal with the bureaucratic chaos, disorganization, prevalent psychopathy[11], and abuse of authority that is rampant within our nation's court system. We don't have a justice system in the United States of America, we have a court system that occasionally provides justice. Mr. Freeman used to be one of those people that thought that the legal system had a few flaws, but overall consisted of judges trying their best to review arguments and come to an objective ruling, but as he's gotten older and fought cases in various courts he's grown to realize that a lot of rulings have nothing to do with the law, the arguments before them, or a genuine desire to provide justice.

Most people do not realize how bad the system is until see it for themselves,

and that's when it finally clicks that some judges don't give a rat's ass about being objective, neutral, or even reasonable. While Mr. Freeman has never experienced this firsthand in the criminal court system, he *has* experienced it in the civil court system where it's obvious that the judges didn't even read his filings prior to making their ruling despite an explicitly stated request from Mr. Freeman to read his filings prior to making their ruling. Plaintiff has also monitored various criminal cases across the country and quickly noticed the trend that most judges are biased in favor of the government and see government attorneys as advisors instead of lawyers arguing one side of a case. The primary takeaway here is that there exists a great number of incompetent, willing-to-feign incompetence, or severely biased judges sitting on the bench that have no desire to be objective. A large part of the reason our nation's court system is so bad is because higher courts turn a blind eye to the obvious disfunction in the lower courts. Of course, such a deeply flawed system that allows such trashy judges to continue screwing people over should be deemed in-and-of-itself unconstitutional, but the courts will never rectify or even recognize their own failings, so they allow these scumbags to sit on the bench screwing people over time and time again. This is all to say that Plaintiff anticipates an incompetent or severely biased magistrate and district court judge being assigned to this case, making an appeal necessary to get a competent or even slightly objective ruling.

USCourts.gov cites *U.S. v. Alvarez (2012)* and espouses the idea that "The U.S. Constitution establishes three separate but equal branches of government"[12] This assertion is very noble, however it is inaccurate. From the conception of this country, the judicial branch was the weaker branch of government and continues

to be to this day. The concept of "Judicial Review" (Courts' ability to block laws in violation of the Constitution) was not established by the Constitution itself, but instead in 1803.[13] While *Marbury v. Madison (1803)* was a pivotal case and a show of power of the Courts, the courts have since largely devolved into the 'whipping boy' of the legislative and executive branches in recent years. This happens because the courts are the only branch of government that does not leverage its powers to achieve objectives.

The disrespect that the other two branches of government display for the courts is visibly apparent in this case as well as publicly observable examples:

1) Less than a year after taking office President Biden started a commission to investigate "reform" for the Supreme Court. To translate:  "I'm not getting my way in the courts, so I'm going to investigate methods for changing the composition of the courts to be more amenable to my agenda."

2) The second that the legislative branch doesn't get their way, they begin attacking the courts as well. Recently, the Judicial Ethics Enforcement Act bill was introduced that would call for an inspector general's office to be established across the judicial branch. Is there a single person stupid enough to think that this will not be utilized to exert pressure on the courts to go along with political agendas? Doubtful. This proposed law is an obliteration of the Separations of Powers Doctrine.

3) You're a plumb fool if you think they aren't using executive/legislative privileged communications to influence mainstream media coverage of the Supreme Court.

4) The executive branch floods your courts with frivolous nonsense, retaliatory

garbage, and farcical filth against political dissidents to push political agendas.

5) They pass laws and change rules with little regard to their constitutionality, clogging up the courts with more litigation that could have been avoided.

6) They don't assist with enforcing court decisions upon request to avoid needless litigation (such as in this case).

7) Did the Supreme Court ever find the *Roe v. Wade* leaker? Plaintiff would bet $1000.00 that one of the other branches of government had some involvement in orchestrating that leak.

The courts never return this abuse with sanctions or retaliatory language of their own—while this might be professional and such behavior may be unbecoming of the court system, it supports the conclusion that the other two branches of government are clearly dominant over the courts. But to make matters worse, in exchange for this abuse, higher courts often reward the other two branches with hyper-deference to attempt to avoid further injury against themselves. Further proving that the courts are not currently possess equal stature to the other two branches.

---

11) https://www.legalcheek.com/2017/05/law-students-are-more-likely-to-be-psychopaths-than-their-psychology-studying-peers-but-economics-and-business-students-are-the-darkest/

12) https://www.uscourts.gov/educational-resources/educational-activities/separation-powers-action-us-v-alvarez

13) https://www.uscourts.gov/about-federal-courts/educational-resources/about-educational-outreach/activity-resources/about#:~:text=The%20best%2Dknown%20power%20of,v.%20Madison%20(1803).

*Lindke v. Freed* is a prime example of this. At first glance, it is a clear victory for Freedom of Speech, but upon further inspection it is really a milquetoast ruling that gives undue deference to public officials and shoots the judicial branch in the foot. To save yourselves and the public, Lindke should have established a far clearer precedent: "You start discussing your government work on your personal social media accounts and it will be subject to First Amendment applicability." Instead of doing this, you opted for a labor-intensive fact-finding inquiry for yourself and any lawyers that wish to fight an improper blocking, which made First Amendment protection on social media unnecessarily murky and time-consuming to litigate. You gave the already overworked court system even more work in dealing with these matters, which increases the chance of cases being denied at the district court level out of efficiency. The ambiguity in the ruling will be exploited by nefarious actors. In this case, Plaintiff requests that you refine this standard to a much simpler precedent to protect your courts and the public.

Additionally, Plaintiff requests that this court leverage its underused power to simplify the process of obtaining a preliminary injunction against clear violations of certain Supreme Court precedents. An expedited preliminary injunction should be able to be completed on a court-provided form that is no more than two pages in length, and should cost no more than $100.00 to file. Following submission of a properly completed preliminary injunction form, the Clerk of the court should make one phone call to the relevant organization and send one Certified letter to that organization instructing that organization to forward that letter to the appropriate person and asking them to come into compliance with Supreme Court precedent or declare one of several strict exemptions (i.e. falsified pleading, death threats,

current restraining order against the injunction filer, etc.). If the organization forwarded that letter to the appropriate person and that person fails to comply with Supreme Court precedent or declare one of the strict exemptions, then the filer of the preliminary injunction request obtains pre-approval for payment of court filing costs and attorney fees, and the impetus would fall to the injuncted person to argue that they should not have to pay. If there is any ambiguity as to whether the organization that received the letter properly submitted it to the injuncted person, pre-approval for court filing costs and attorney fees from that organization is pre-approved to the person filing the injunction request and that organization would have to prove that there is a legitimate basis for why they should not be liable. If the injuncted person temporarily complies, but reoffends, then the person that filed the first preliminary injunction should pay $50.00 and file a second simplified preliminary injunction form, and the process repeats. A third temporary compliance followed by a reoffence results in punitive damages being pre-approved for the person that filed the injunction in addition to pre-approval for court filing/attorneys fees from the Defendant.

Such a simplistic schema maximizes efficiency and due process for all parties and the courts, increases compliance with Supreme Court precedents, and asserts that the courts will not be abused by other branches of the government or private entities. While it is possible that those other two branches of government retaliate against the judicial branch (i.e. 'court-packing', 'inspector general', etc.), should that happen all of the current Justices (regardless of political alignment) should be on board with sanctions against nefarious actors trying to improperly influence the court for political agendas (suspension of legislative/presidential immunity,

allowing punitive damages against the government, dismissal of obvious retaliatory government litigation, decrease government filing word limits, etc.).

To summarize this subsection: *Lindke v. Freed* should be refined into a simpler precedent not requiring complex inquiry. Violations of certain Supreme Court precedents should not require hundreds of hours of labor and litigation to deal with obvious non-compliance with established Supreme Court doctrines like this. The extreme deference that the judicial branch has for the executive and legislative branches is not reciprocal, and the system of checks and balances is failing because the courts have not asserted themselves as an equal branch of government in recent years. The judicial branch needs to leverage their power and establish some mechanism that asserts that the courts will not be abused by either of the other branches of government—to include state-level branches of government—which maximizes efficiency for all parties involved.

**CLAIMS**

**FIRST CLAIM FOR RELIEF**
**VIOLATION OF THE FIRST AMENDMENT OF THE U.S. CONSTITUTION**

37. Mrs. Epps (@elisabethepps) blocked Mr. Freeman (@theantigrifter) from commenting on her personal/campaign account on X (formerly known as Twitter), which proximately caused the violation (deprivation) of his First Amendment right to Freedom of Speech (and arguably peaceful assembly when considering others blocked that Plaintiff cannot represent) applicable to states through the Fourteenth Amendment.

38. The account that Mr. Freeman is blocked from commenting on is an account that frequently discusses official state business to such a degree that the First Amendment should be held applicable to the entirety of the account.

- 24 -

39. The post from Rep. Epps resulting in Mr. Freeman being blocked was a post pertaining to official government business, to include a bill that was before the state General Assembly and a discussion about the U.S. Constitution and Rep. Epps' alleged oath to support it.

40. Mr. Freeman made numerous attempts to resolve this prior to filing this Complaint that Mrs. Epps did not use to rectify this issue without necessitating legal action.

41. Courts rely on assistance from the executive branch to enforce court decisions as the courts do not have any direct enforcement arm of their own. Accordingly, Mr. Freeman contacted the Colorado Attorney General requesting assistance in this matter to avoid litigation and that assistance was not supplied by Mr. Weiser.

42. As a direct and proximate cause and consequence of Mrs. Epps and Mr. Weiser's failure to adhere to their responsibilities to uphold the Constitution, Plaintiff suffered injuries, damages, and losses to be proven at trial.

43. The unlawful violation of the Plaintiff's First Amendment right from the Defendants was intentional.

44. The unlawful actions and non-actions from the Defendants was done with malice or with reckless indifference to the Plaintiff's constitutional rights.

## SECOND CLAIM FOR RELIEF
## INJUNCTION AGAINST COLORADO STATE REPRESENTATIVE ELISABETH EPPS

45. Mrs. Epps (@elisabethepps) a state representative for the House of Representatives in the General Assembly of Colorado blocked Mr. Freeman (@theantigrifter) from commenting on her personal/campaign account on X

(formerly known as Twitter), which proximately caused the violation (deprivation) of his First Amendment right to Freedom of Speech (and arguably peaceful assembly when considering others blocked that Plaintiff cannot represent) applicable to states through the Fourteenth Amendment.

46. The account that Mr. Freeman is blocked from commenting on is an account that frequently discusses official state business to such a degree that the First Amendment should be held as applicable to the entirety of the account.

47. The post from Mrs. Epps resulting in Mr. Freeman being blocked was a post pertaining to official government business (HB24-1292), to include a bill that was before the state House and a discussion about the U.S. Constitution and Rep. Epps' alleged oath of office to uphold it.

48. The Plaintiff made numerous attempts to resolve this prior to filing this Complaint that Mrs. Epps did not use to rectify this issue in a timely manner.

49. Due to the aforementioned factors, based on recently established Supreme Court precedent, the Plaintiff is likely to prevail on the merits of this case.

50. Supreme Court precedent establishes that "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns, 427 U.S. 347 (1976) referencing New York Times Co. v. United States, 403 U. S. 713 (1971).*

51. The harm that Mr. Freeman is suffering as a result of this greatly exceeds the less than two minutes it would take for Mrs. Epps to unblock him.

52. Unlike Mrs. Epps, Mr. Freeman is an ardent proponent of the Constitution and the rights it provides to all Americans. His dialogue primarily focuses on the Constitution and political affairs and thus the public interest will benefit from an

injunction.

53. For these reasons, a preliminary injunction is appropriate.

**THIRD CLAIM FOR RELIEF**
**VIOLATION OF ALLEGED OATH OF OFFICE RESULTING IN**
**DISQUALIFICATION OF COLORADO STATE REPRESENTATIVE ELISABETH**
**EPPS FROM HOLDING PUBLIC OFFICE**

54. In accordance with Article V, Sec. 2, Para. 2 of the Colorado Constitution, Rep. Epps is required to take an oath of office wherein she swore to uphold the Colorado Constitution and the U.S. Constitution.

55. In a statement rendered to Mr. Freeman, Mrs. Epps hints at the possibility that she never took that oath ("…oaths you didn't watch").

56. Further, Mrs. Epps disparaged the Constitution by referring to it as a "piece of parchment". When taken in full context, a reasonable person would come to the conclusion that her comments are disrespectful to a document that she allegedly swore an oath to uphold.

57. Mrs. Epps also disparaged her alleged oath of office by declaring that she "didn't make a non-negotiable death pact" with the Constitution. When taken in full context, a reasonable person would come to the conclusion that her comment is disparaging to her alleged oath of office without sufficient justification.

58. Additionally, Mrs. Epps made known that she does not consider herself to be a person with "unflinching fealty" to the U.S. Constitution. When taken in full context, a reasonable person would come to the conclusion that her comments are indicative of a person that is not loyal to the Constitution.

59. If Rep. Epps did take an oath prior to taking office, The aforementioned statements taken together constitute an opposition (i.e. 'rebellion') to the Constitution, resulting in § 3 of the Fourteenth Amendment being applicable.

60. The Constitution (to include the bill of rights) is the Supreme Law of the Land and legislators that concede that they possess no deference to it are a threat to the rights of Americans.

61. If Mrs. Epps did not take an oath, then she is holding office in violation of Article V, Sec. 2, Para. 2 of the Colorado Constitution.

62. Mrs. Epps' statements pertaining to the U.S. Constitution and her alleged oath of office were intentional and made with malice or reckless indifference toward the U.S. Constitution and in violation of her alleged oath to support it. This malice or reckless indifference toward the Constitution resulted in the aforementioned violation (deprivation) of Mr. Freeman's First Amendment rights.

63. For these reasons, Rep. Epps is not qualified to hold federal office or any state office requiring allegiance to the U.S. Constitution.

## RELIEF REQUESTED FROM THE COURT

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in his favor and against the Defendants, and award the following relief, to the fullest extent allowed by law:

1) A Declaratory Judgement finding that the actions of Elisabeth Epps and the negligence of Mr. Philip Weiser resulted in a violation of Mr. Freeman's First Amendment rights under the U.S. Constitution.

2) An Injunctive Order to Elisabeth Epps directing her to unblock Mr. Freeman (@TheAntiGrifter) from her personal/campaign X (formerly known as Twitter) account (@elisabethepps).

3) A Writ of *Quo Warranto* finding that Rep. Epps is ineligible to hold any government position that requires allegiance to the U.S. Constitution.

4)  An award of economic damages in the form of reimbursement of all Court Filing Fees (to include any appeals), reimbursement for USPS Priority Mail Flat Rate Envelope in the amount of $9.85 to mail the complaint to the Court, reimbursement for inevitable USPS Priority Mail Flat Rate shipping ($9.85) with Certified Mail ($4.40) and Electronic Return Receipt ($2.32) to mail the summons and complaint both Defendants, as well as reimbursement for any other mail costs that prove necessary to achieve justice in this case. The total amount for this reimbursement currently stands at $447.99.

5)  An award for Plain and Suffering in the amount of $14.42 (Colorado's minimum wage) per hour of labor it takes to fight this case. Producing this Complaint took approximately 25 hours resulting in a current cost of $360.50 as of the filing of this Complaint.

6)  An additional award for Pain and Suffering for an additional amount for mental stress to be determined by the Jury.

7)  An award of punitive damages to be determined by the Jury.

8)  An award of pre and post judgement interest, as allowed.

9)  Such other and further relief this Court deems justified as Justice allows.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Dated this 30th day of April, 2024.

Respectfully submitted,

*/s/ Michael S. Freeman II*
Michael S. Freeman II
3854 Saguaro Cir.
Colorado Springs, Colorado 80925
Tel: (719) 484-9050
E-mail: Michael.s.freeman2@gmail.com

- 29 -