IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Maritza Dominguez Braswell**

Civil Action No. 24–cv–01215–MDB

MICHAEL S. FREEMAN, II,

Plaintiff,

v.

REP. ELISABETH H. EPPS, in her individual and official capacities, and
PHILIP J. WEISER, in his individual and official capacities,

Defendants.

---

**ORDER**

---

This matter is before the Court on Defendant Philip J. Weiser's Renewed Motion to Dismiss (Doc. No. 39) and Representative Elisabeth Epps' Motion to Dismiss Second Amended Complaint (Doc. No. 40) (collectively, the "Motions"). Plaintiff has filed responses in opposition to both Motions. (Doc. No. 47, Doc. No. 46.) Defendants replied in support of their Motions. (Doc. Nos. 48; 49.) After reviewing the Motions, briefing, and relevant law, the Court **ORDERS** that the Motions are **GRANTED**.

**SUMMARY FOR *PRO SE* PLAINTIFF**

The Court is granting Defendants' Motions to Dismiss and closing this case. You do not have standing to pursue a claim against Defendant Weiser. Additionally, under Supreme Court precedent, your allegations against Defendant Epps fail to state a First Amendment claim because they do not demonstrate that Defendant Epps had "actual authority" to speak on social

media on behalf of the State. Finally, you do not have standing to pursue an order disqualifying Defendant Epps from public office under the Fourteenth Amendment, and the Court lacks subject matter jurisdiction over a *quo warranto* action against Defendant Epps.

**BACKGROUND**

Plaintiff alleges that on or about April 12, 2024, Defendant Epps, then a member of the Colorado House of Representatives, made the following post on X (formerly known as Twitter) using the handle @elisabethepps:




(Doc. No. 32-1[1] at ¶ 1.)[2] Plaintiff says he responded to the post, and the following back and forth occurred on X:

**Plaintiff**: Some Dems respect the Constitution and some Dems don't.

---

[1] Plaintiff's red-lined Amended Complaint is docketed at ECF 32, while the clean copy is attached as an exhibit at ECF 32-1. The document at ECF 32-1 is the operative Complaint in this matter.

[2] According to Plaintiff, Defendant Epps acknowledged personally making the post in question during a House of Representatives debate. (Doc. No. 32-1 at ¶ 8.)

> **Defendant Epps**: I didn't make a non-negotiable death pact with a piece of parchment written by men who owned humans. [S]ome of us read, think, analyze for ourselves. [O]thers prefer unflinching fealty to [a] document premised on my people being property. [C]'est la vie.
>
> **Plaintiff**: "Elisabeth, the Constitution is supposed to prevent you from abusing the rights of Americans. Whether or not the founding father fit today's definition of moral is irrelevant. However, I do appreciate your candidness in admitting your lack of honesty in taking that oath.
>
> **Defendant Epps**: Michael, [e]njoy pontificating into the void and/or trolling elsewhere. The rest of us will keep engaging in good faith while you make random lie-filled pronouncements about morality I didn't mention and about oaths you didn't watch. Take good care.

(*Id.* at ¶¶ 2–5.) Plaintiff alleges he was blocked from viewing or responding to the @elisabethepps account before he could make another reply. (*Id.* at ¶ 6.)

Plaintiff also alleges that he "promptly" sent an email to Defendant Epps' House email account (elisabeth.epps.house@coleg.gov) asking to be unblocked. (*Id.* at ¶ 7.) According to Plaintiff, a few hours later he received an email from an address using the domain of Defendant Epps' campaign website (ehe@elisabethepps.com) saying:

> For the time being, Rep. Epps' primary public + legislator account on the site formerly known as Twitter is @RepEpps. Her primary personal + campaign account is @Elisabethepps.
>
> We will review your request within 30 days and seek to determine if you were blocked, and if you were blocked in error, in which case we would address that accordingly. If not, will attempt to communicate that as well.

(*Id.*) Plaintiff alleges that he then responded to this email, stating that 30 days was an "unreasonable amount of time." (*Id.* ¶ 9.) He also alleges that on or about April 17, 2024, he emailed Colorado Speaker of the House Julie McCluskie seeking assistance in being unblocked. (*Id.* ¶ 10.) Then, on or about April 19, 2024, he emailed Attorney General Weiser requesting the same. (*Id.* ¶ 11.) On or about April 22, 2024, he emailed Defendant Weiser a second time,

indicating his intent to sue. (*Id.* ¶ 12.) Plaintiff says he did not receive a response to any of these communications. (*Id.* ¶¶ 9–12.)

Then, "[o]n or after August 28th, 2024," the @elisabethepps account unblocked Plaintiff. (*Id.* ¶13.) However, the account is set to "protected status" and requires approval before a new follower can see the account's posts, old or new. (*Id.*) On or about October 7, 2024, Plaintiff submitted a request to follow the @elisabethepps account, which was not accepted. (*Id.* at ¶ 15.) Defendant Epps' term as a member of the Colorado House of Representatives expired on January 8, 2025, when she was replaced by Sean Camacho.[3]

Through 42 U.S.C. § 1983, Plaintiff brings a First Amendment claim against Defendants Epps and Weiser. (*Id.* at ¶¶ 47–57.) He also seeks an injunction requiring Defendant Epps to "remove the protected status from [@elisabethepps]," and a *quo warranto* action against Defendant Epps to prevent her from holding public office for failing to take her oath and being in rebellion against the United States under section 3 of the Fourteenth Amendment. (*Id.* at ¶¶ 58–78.) Defendants are sued in their individual and official capacities.

Defendants have moved to dismiss Plaintiff's claims and requests for relief. (*See* Doc. Nos. 39; 40.) Defendant Weiser argues Plaintiff's claim against him must be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of standing and because he is immune. (Doc. No. 39 at 5–11.) Alternatively, Defendant Weiser argues Plaintiff has failed to state a claim

[3] The Court may take "judicial notice of ... facts which are a matter of public record." *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (citation omitted); *see* Esteban L. Hernandez, *Epps, Hernández lose re-election bids in blow for progressives*, AXIOS DENVER, (June 26, 2024), https://www.axios.com/local/denver/2024/06/26/denver-progressives-trailing-democratic-primary; *2024 General Election Results: State Representative – District 6*, COLO. SEC'Y ST. (last updated Nov. 25, 2024), https://results.enr.clarityelections.com/CO/122598/web.345435/#/detail/2060.

under Federal Rule of Civil Procedure 12(b)(6). (*Id.* at 12–13.) For her part, Defendant Epps argues she is entitled to qualified immunity on Plaintiff's First Amendment claim and that Plaintiff's request for injunctive relief is moot because Defendant Epps is no longer a Colorado Representative. (Doc. No. 40 at 4–10.) She also argues Plaintiff lacks standing to challenge her ability to hold public office, and that even if he has standing, he has failed to plausibly allege that Defendant Epps failed to take her oath or is in rebellion against the United States. (*Id.* at 11–15.)

## LEGAL STANDARD

### I. Fed. R. Civ. P. 12(b)(1)

Federal Rule of Civil Procedure Rule 12(b)(1) allows a court to dismiss a claim for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case but a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the complaint's allegations. *Creek Red Nation, LLC v. Jeffco Midget Football Ass'n., Inc.*, 175 F. Supp. 3d 1290, 1293 (D. Colo. 2016). A challenge to subject matter jurisdiction may take one of two forms: a facial attack or a factual attack. When reviewing a facial attack on a complaint pursuant to Rule 12(b)(1), the Court accepts the allegations of the complaint as true. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). When reviewing a factual attack on a complaint supported by affidavits and other documents, the Court makes its own factual findings and need not convert the motion to one brought pursuant to Rule 56. *Id.* at 1003.

### II. Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a Rule 12(b)(6) motion to dismiss, means that the plaintiff pleaded facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The Iqbal evaluation requires two prongs of analysis. First, the Court identifies "the allegations in the complaint that are not entitled to the assumption of truth," i.e., those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, the claim survives the motion to dismiss. *Id*. at 679.

That being said, the Court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, "[a]

pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (citation omitted).

**III. *Pro se* Plaintiff**

Plaintiff is proceeding *pro se.* The Court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding the allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall*, 935 F.2d at 1110. A court may not assume that a plaintiff can prove facts that have not been alleged or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (stating that a court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). Plaintiff's *pro se* status does not entitle him to an application of different rules. *Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

## ANALYSIS

**I. Defendant Weiser's Motion**

"Article III of the Constitution confines the federal judicial power to 'Cases' and 'Controversies.' Under Article III, a case or controversy can exist only if a plaintiff has standing to sue—a bedrock constitutional requirement." *United States v. Texas*, 599 U.S. 670, 675 (2023); *id.* at 675–76 ("Standing doctrine helps safeguard the Judiciary's proper—and properly limited—role in our constitutional system."). Because standing goes to a court's subject-matter jurisdiction, a federal court has an independent obligation to confirm standing. *Kerr v. Polis*, 20 F.4th 686, 692 (10th Cir. 2021). The burden of establishing standing rests squarely on the party asserting jurisdiction, here, Plaintiff. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). To meet this burden, Plaintiff must demonstrate "(1) an injury in fact; (2) a causal connection between the injury and the challenged action; and (3) a likelihood that a favorable decision will redress the injury." *Jordan v. Sosa*, 654 F.3d 1012, 1019 (10th Cir. 2011) (citing *Friends of the Earth Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180–81 (2000)).

Plaintiff alleges that Defendant Weiser failed to enforce Plaintiff's purported First Amendment right not to be blocked by the @elisabethepps account on X. But the Supreme Court has made clear that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *see Texas*, 599 U.S. at 667 (reiterating that "a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution" (quoting *Linda R.S.*, 410 U.S. at 619)). "This principle extends not only to criminal prosecution, but to civil enforcement as well." *R.R. 1900, LLC v. City of Sacramento*, 604 F. Supp. 3d 968, 974 (E.D.

Cal. 2022) (collecting cases); *see Doyle v. Okla. Bar Ass'n,* 998 F.2d 1559, 1566 (10th Cir. 1993) (concluding that plaintiff lacked standing to "insert himself substantively into a license-based discipline system"); *see also Heckler v. Chaney*, 470 U.S. 821, 831–32 (1985) (agency decision not to take enforcement actions requested by individuals not subject to review, analogizing the agency's decision with a prosecutor's decision not to indict). Even more specific to this case, the rule forecloses claims by private individuals premised on an alleged governmental failure to investigate or remedy constitutional violations purportedly committed by someone else.[4] *See, e.g.*, *Carmichael v. Mississippi Cnty. Jail*, 2023 WL 3587561, at *2 (E.D. Ark. May 2, 2023) (finding the "plaintiff did not have a constitutional right to demand an investigation" into an alleged violation of his Eighth Amendment rights), *report and recommendation adopted*, 2023 WL 3584480 (E.D. Ark. May 22, 2023); *White v. Houdf*, 2007 WL 9734256, at *1 (D.N.M. Apr. 30, 2007) (finding the plaintiff lacked standing to sue FBI officers over their failure to investigate alleged constitutional violations by the plaintiff's landlord), *report and recommendation adopted*, 2007 WL 9734007 (D.N.M. May 15, 2007); *see also Cohen v. Richardson*, 2024 WL 418788, at *4 (N.D.N.Y. Feb. 5, 2024) (finding the plaintiff lacked standing to bring constitutional claims against the New York State Board of Elections for its alleged failure to redress his grievances). In other words, this Court lacks subject-matter jurisdiction over Plaintiff's claim against Defendant Weiser, and the claim must be dismissed.[5]

---

[4] Notably, plaintiffs alleging constitutional violations by state or local officials already have a recognized means of redress: they may bring suit under 42 U.S.C. § 1983 against the alleged wrongdoer. This separate and well-established avenue exists regardless of the standing limitations discussed above.

[5] The Court does not need to reach Defendant Weiser's additional arguments for dismissal.

## II. Defendant Epps' Motion

### A. First Amendment Claim

Plaintiff contends Defendant Epps' decision to block him from viewing posts made by the @elisabethepps account violated his First Amendment rights. Defendant Epps argues she is entitled to qualified immunity on this claim.

#### *i. Qualified immunity*

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). A court should resolve questions of qualified immunity at the earliest possible stage of litigation. *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987).

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, when a defendant raises the defense of qualified immunity, a "plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017) (internal quotation marks omitted).

#### *ii. Plaintiff fails to plausibly plead a constitutional violation*

42 U.S.C. § 1983 provides a cause of action against "[e]very person who, *under color of any statute, ordinance, regulation, custom, or usage, of any State*" deprives someone of a federal

constitutional or statutory right. 42 U.S.C. § 1983 (emphasis added). "As its text makes clear, this provision protects against acts attributable to a State, not those of a private person." *Lindke v. Freed*, 601 U.S. 187, 194 (2024). Similarly, "[t]he need for governmental action is also explicit in the Free Speech Clause, the guarantee that [Plaintiff] invokes in this case." *Id.* at 194; *see Buentello v. Boebert*, 545 F. Supp. 3d 912, 916 (D. Colo. 2021) ("The First Amendment's protection of the People's right to free speech, like other rights protected by the Constitution, is implicated only when the government, not a private entity or individual, regulates speech." (citing *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802 (2019)). Thus, to plausibly plead a violation of his First Amendment rights under Section 1983, Plaintiff must sufficiently allege that Defendant Epps' decision to block him from interacting with the @elisabethepps account was an act attributable to the state.

In *Lindke*, the Supreme Court held that a public official's social-media activity constitutes state action if "the official (1) possessed actual authority to speak on the State's behalf, and (2) purported to exercise that authority when he spoke on social media." *Lindke*, 601 U.S. at 198. A court must answer the first question in the affirmative before it may move to the second. *See id.* ("The appearance and function of the social-media activity are relevant at the second step, but they cannot make up for a lack of state authority at the first.").

As to the first prong, the authority to speak on the State's behalf must come from one of the sources identified in § 1983: statute, ordinance, regulation, custom, or usage. *Id.* at 200. As explained in *Fox v. Faison,* 2025 WL 2406432, at *7 (M.D. Tenn. Aug. 19, 2025):

> While written law [is] self-explanatory, the Court explained that the terms "custom" and "usage" "encompass 'persistent practices of state officials' that are 'so permanent and well settled' that they carry 'the force of law.'" Thus, as applied to the facts before [the Court in *Lindke*], "a city manager ... would be

> authorized to speak for the city if written law like an ordinance empowered him to make official announcements" *and* if, for example, "prior city managers have purported to speak on [the city's] behalf and have been recognized to have that authority for so long that the manager's power to do so has become 'permanent and well settled.'" And if he has such "authority to speak for the State, he may have the authority to do so on social media even if the law does not make that explicit." "In sum, a defendant ... must have actual authority rooted in written law or longstanding custom to speak for the State. That authority must extend to speech of the sort that caused the alleged rights deprivation."

(citing and quoting *Lindke*, 601 U.S. at 200–01) (internal citations omitted) (emphasis in original).

"Few courts have had the opportunity to apply *Lindke*'s state action test. Even fewer have applied it to actions taken by local, state, or federal *legislators*, as opposed to executive-branch officials." *Fox,* 2025 WL 2406432, at *7 (emphasis in original) (collecting cases). That said, most, if not all, courts considering this question have concluded legislators—as opposed to executive branch members—individually lack "actual authority to speak on the State's behalf," and thus, their social media activity is not conducted under color of law.[6] *Lindke*, 601 U.S. at 198.

For example, in *Fox*, the court rejected a claim similar to this one holding there was no basis to conclude individual state legislators possessed actual authority to speak on behalf of the state through social media. *Fox*, 2025 WL 2406432, at *9. The Court noted that though legislators often interact with constituents online—indeed such engagement may be a routine and even important part of their jobs—those interactions remain private communications unless

[6] Indeed, the Court has not located, nor has Plaintiff presented, a post-*Lindke* case concluding that a legislator has the authority to speak on behalf of the state on social media. *But see, e.g.*, *Felts v. Reed*, 504 F. Supp. 3d 978, 988 (E.D. Mo. 2020) (finding that, pre-*Lindke*, it was plausible the president of the St. Louis Board of Aldermen "was acting under color of law in running his Twitter account").

grounded in a statutory or customary grant of authority. *Id.* at 10. As the court explained, "state legislators commonly engage and speak with their constituents through various media, including social media, [but Plaintiff] points to no evidence that a Tennessee state legislator, in performing those functions, is authorized by written law or longstanding custom to speak *for the state* or to make official pronouncements—as opposed to simply functioning as a conduit between the state and the constituents whose interests a legislator is supposed to represent." *Id.* (emphasis in original)).

Other courts applying *Lindke* have reached the same conclusion. In *Detiege v. Jackson* the court rejected the notion that a state legislator's social media activity was conducted on behalf of the state under the *Lindke* test. 2025 WL 2380730, at *7–8 (W.D. La. Aug. 15, 2025). Similarly, in *Sanderson v. Myrdal*, the North Dakota Supreme Court found a legislator's campaign-focused social media account was not vested with authority to speak for the state. 13 N.W.3d 739, 746 (N.D. 2024), *cert. denied*, 145 S. Ct. 1939 (2025); *see also Chase v. Morgan*, 2025 WL 918438, at *5 (E.D. Tenn. Mar. 26, 2025) (finding a state juvenile court judge's social media activity was not conducted under the color of law even when the posting was about the court's activities).

The same is true with respect to claims against federal legislators. In *Dixon v. Clyburn*, the court dismissed claims against a congressman because the complaint "lack[ed] sufficient factual allegations to show that [the congressman] exercised actual authority to speak on behalf of the Legislature when he spoke via his Twitter accounts." *Dixon v. Clyburn*, 2024 WL 5379014, at *5 (D.S.C. Oct. 10, 2024), *report and recommendation adopted*, 2025 WL 354416 (D.S.C. Jan. 31, 2025). Similarly, prior to *Lindke*, the Honorable Judge Domenico denied a

preliminary injunction motion seeking to compel a federal legislator to unblock a constituent, explaining that "member[s] of Congress[ ] ha[ve] almost no power to [individually] act on behalf of the United States government." *Buentello*, 545 F. Supp. 3d at 918–19 (stating, "it is hard to see how the [social media] action could be deemed to be one taken under authority created by the state or on its behalf").

While none of these decisions are binding on the Court, they are persuasive and, in the Court's view, correctly decided under *Lindke*. Indeed, the Colorado Constitution vests legislative power in the General Assembly as a *collective body*, not in individual legislators. *See* Colo. Const. art. V, § 1 ("The legislative power of the state shall be vested in the general assembly consisting of a senate and house of representatives, both to be elected by the people."). Indeed, formal legislative reports or statements are issued through bodies such as the Legislative Council, not by single members. C.R.S. § 2-3-301 *et seq*. Moreover, Colorado statutes confirm that executive branch officials, not legislators, are charged with articulating the state's official positions. *See, e.g.,* C.R.S. § 24-31-101(1)(a).

In sum, legislators may represent their constituents, debate matters of public concern, and vote on proposed legislation, but they do not possess "actual authority" to speak on behalf of the state. Thus, their social media activity is not state action.

Because Defendant Epps lacked actual authority to speak on behalf of the State, the Court need not reach the second prong of the analysis—whether the "appearance and function of the social-media activity" suggests the government official intended to speak on behalf of the State. *See Lindke*, 601 U.S. at 198. Moreover, since there is no action taken under color of state law,

Plaintiff fails to plead a constitutional violation under § 1983. Accordingly, the § 1983 claim against Defendant Epps fails as a matter of law.[7]

**B. Request for Injunctive Relief**

Plaintiff's request for an injunction allowing him to view the @elisabethepps X account posts, is directly tied to Plaintiff's First Amendment claim. (Doc. No. 32-1 at ¶¶ 58–67.) Having determined that Plaintiff's First Amendment claim against Defendant Epps fails as a matter of law, the related injunction claim also fails. *See Coomer v. Donald J. Trump for President, Inc.*, 552 P.3d 562, 603 (Colo. Ct. App. 2024) (saying that the "fate [of a request for injunctive relief] flows from the substantive claim to which it is attached" and "if the substantive claim is dismissed, the ancillary request for injunctive relief goes with it").

**C. Request to Disqualify Defendant Epps from Public Office**

Plaintiff also seeks a Court order by *quo warranto* action "disqualify[ing]" Defendant Epps from holding public office for allegedly failing to take her oath and being in rebellion against the United States. (Doc. No. 32 at ¶¶ 68–78.)[8]

Plaintiff contends Defendant Epps is barred from holding office under section 3 of the Fourteenth Amendment (the "Disqualification Clause"). (*Id.* at ¶ 73) As is relevant here, the Disqualification Clause provides "that no person who has previously taken an oath as a member

[7] Because Plaintiff fails to plead a constitutional violation, the Court need not reach the clearly established prong of the qualified immunity analysis. *See Wilder v. Turner*, 490 F.3d 810, 815 (10th Cir. 2007) (instructing district court on remand to enter judgment in favor of defendant on basis of qualified immunity, where plaintiff failed to carry his burden to show violation of a constitutional right).

[8] The clean copy of Plaintiff's Amended Complaint (Doc. No. 32-1) appears to inadvertently omit paragraphs 75 through 78. Accordingly, the Court cites the red-lined version of the Amended Complaint here.

of any State legislature shall hold a State office if he has engaged in insurrection or rebellion against the State." *Hill v. Mastriano*, 2022 WL 16707073, at *1 (3d Cir. Nov. 4, 2022). Defendant Epps argues Plaintiff lacks standing to pursue a claim under the Disqualification Clause. The Court agrees.

As noted, "[a]rticle III standing requires showing… an 'injury in fact'…." *Benham v. Ozark Materials River Rock, LLC*, 885 F.3d 1267, 1272 (10th Cir. 2018) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180–81, (2000)). A plaintiff satisfies the injury requirement when he suffers "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. To be particularized, the challenged conduct must "affect[ ] the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016).

Here, Plaintiff fails to identify a "particularized" injury traceable to Defendant Epps' ability to hold or seek public office. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). That is, Plaintiff "has not pointed to any connection between himself, on the one hand, and [Defendant Epps], on the other, that transforms the general harm he alleges into a particularized one." *Clark v. Weber*, 699 F. Supp. 3d 879, 881 (C.D. Cal. 2023); *see Judicial Watch, Inc. v. Griswold*, 554 F. Supp. 3d 1091, 1102–03 (D. Colo. 2021) ("[W]hen a plaintiff asserts only a harm to rights shared with every other citizen, the claim falls outside the constitutional constraints on federal jurisdiction."). Thus, Plaintiff has not sufficiently alleged standing and the Court therefore lacks jurisdiction over a Disqualification Clause claim. *See New Mexico Off-Highway Vehicle All. v. United States Forest Serv.*, 702 F. App'x 708, 710 (10th Cir.

2017) ("Under Article III of the Constitution, standing is a prerequisite to federal court jurisdiction to hear and decide a case.").

The Court's decision is in line with other courts around the country which "have consistently held that individual citizens do not have Article III standing to challenge whether another citizen is qualified to hold public office."[9] *Perry-Bey v. Trump*, 2023 WL 9051260, at *3–4 (E.D. Va. Dec. 29, 2023) ((collecting cases)); *see Hill*, 2022 WL 16707073 (concluding that a voter did not have standing to bring an action to disqualify a candidate from the ballot because the voter did not suffer a particularized injury); *Berg v. Obama*, 586 F.3d 234, 239 (3d Cir. 2009) (finding the plaintiff "lacks standing to bring this suit because he has suffered no injury particularized to him"); *Clark*, 699 F. Supp. 3d at 881 ("Plaintiff here has not pointed to any connection between himself, on the one hand, and Defendant or Mr. Trump, on the other, that transforms the general harm he alleges into a particularized one."); *Stencil v. Johnson*, 605 F. Supp. 3d 1109, 1117 (E.D. Wis. 2022) (finding the plaintiffs' attempt to remove candidates from the ballot amounted to a "generalized grievance" that did not confer standing).

Moreover, to the extent Plaintiff attempts to assert a *quo warranto* claim, it must be brought under state law, because Defendant Epps is a state official. *See Hill*, 2022 WL 16707073 at *2 (noting that though federal law provides for *quo warranto* suits against federal officials, there is no similar federal law related to state officials). And if the state law claim is brought in federal court, there must be some independent basis for jurisdiction (federal question or

[9] Moreover, because Defendant Epps is no longer a member of the General Assembly, nor has Plaintiff alleged she intends to run for office again, the injury alleged by Plaintiff is entirely hypothetical, which is also insufficient to establish standing. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013) (holding that, when seeking prospective relief, the plaintiff's injury must be "certainly impending").

diversity), because "federal courts have no general *quo warranto* jurisdiction." *Id.* at *2; *see Barany v. Buller*, 670 F.2d 726, 735 (7th Cir. 1982) ("[T]here is no general *quo warranto* jurisdiction in the federal courts.").

The Complaint does not assert a plausible basis for federal question jurisdiction, and the Court does not see one on its own. Plaintiff cites certain federal statutes, including 28 U.S.C. § 1343 and 28 U.S.C. § 1651. But his citations are not persuasive. Section 1343 is the "jurisdictional counterpart" to 28 U.S.C. § 1983 and 1985, and does not have any relevance to the Court's jurisdiction over a state law claim. 1 Nahmod, Civil Rights & Civil Liberties Litigation: The Law of Section 1983 § 1:1; 21 Fed. Proc., L. Ed. § 50:487. Section 1651, which is known as the All Writs Act, provides that federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." But "the All Writs Act confers only ancillary jurisdiction where jurisdiction is otherwise lodged in the court." *Justice v. Carpenter*, 2020 WL 8669809, at *2 (D. Kan. Nov. 16, 2020). In other words, "the All Writs Act ... does not create or provide independent subject matter jurisdiction for courts where such jurisdiction is lacking, but, instead, provides a means to correct an action within the court's jurisdiction." *United States v. Tinajero-Porras*, 304 F. App'x 754, 756 (10th Cir. 2008). Accordingly, section 1651 does not confer independent subject matter jurisdiction over a *quo warranto* action. *See, e.g.*, *Justice* 2020 WL 8669809; *Drake v. Obama*, 664 F.3d 774, 785 (9th Cir. 2011) ("Plaintiffs do briefly mention the All Writs Act, 28 U.S.C. § 1651, and 42 U.S.C. § 1988 as possible statutory bases for a *quo warranto* proceeding. Neither is viable.").

Moreover, there is no basis for diversity jurisdiction because Plaintiff and Defendant Epps are both citizens of Colorado. (*See* Doc. No. 32-1 at 2); *see, e.g.*, *Hill*, 2022 WL 16707073 at *2 ("Absent diversity ... jurisdiction, not present here, the District Court lacked authority to consider any state *quo warranto* action."); *McGee v. Schindler*, 2024 WL 402534, at *2 (N.D. Ind. Feb. 2, 2024) (dismissing a *quo warranto* action because the parties all appeared to be citizens of Indiana); *Bhambra v. Cnty. of Nev.*, 2010 WL 3258836, at *3–4, n.2 (E.D. Cal. Aug. 16, 2010) (dismissing a *quo warranto* action because the plaintiff had not asserted a proper basis for federal jurisdiction question jurisdiction and parties were all California citizens).

Finally, though Plaintiff correctly suggests that the Court can, under some circumstances, continue to exercise supplemental jurisdiction, (*see* Doc. No. 32-1 at 9), the Court declines to do so here. *See Bauchman for Bauchman v. W. High Sch.*, 132 F.3d 542, 549 (10th Cir. 1997) ("If federal claims are dismissed before trial, leaving only issues of state law, 'the federal court should decline the exercise of jurisdiction.'" (quoting *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 350 (1988))).[10]

**CONCLUSION**

For the foregoing reasons it is

[10] Indeed, even the Court did exercise jurisdiction and addressed the plausibility of the *quo warranto* claim, it is unlikely to survive scrutiny. Today, a private individual may only bring a *quo warranto* action under very limited circumstances. 13 Colo. Prac., Civil Procedure Forms & Commentary § 106:5 (3d ed.) (saying that only a district attorney may bring a suit to challenge an individual purporting to hold public office "and only if the district attorney declines is a private *quo warranto* action permitted." (citing Colo. R. Civ. P. 106(a)(3)); *see also See Brown v. Walker Com., Inc.*, 521 P.3d 1014, 1019 (Colo. 2022). And in any event, Plaintiff fails to plausibly allege that Defendant Epps failed to take her oath of office or is otherwise in rebellion against the United States.

**ORDERED** that Defendant Philip J. Weiser's Renewed Motion to Dismiss (Doc. No. 39) and Representative Elisabeth Epps' Motion to Dismiss Second Amended Complaint (Doc. No. 40) are **GRANTED**:

1. Plaintiff's First Amendment claims against Defendants Epps and Weiser, and corresponding request for an injunction against Defendant Epps, are **dismissed with prejudice.**
2. Plaintiff's request for an order disqualifying Defendant Epps from public office is **dismissed without prejudice.**[11]

The Clerk of Court is directed to **close this case**. The Clerk is further directed to mail a copy of this Order to Plaintiff.

Michael S. Freeman, II
3854 Saguaro Circle
Colorado Springs, CO 80925

Dated this 19th day of September, 2025.

**BY THE COURT:**

Maritza Dominguez Braswell
United States Magistrate Judge

---

[11] *See Kelly v. Wilson*, 426 F. App'x 629, 633 (10th Cir. 2011) ("A dismissal for lack of subject matter jurisdiction must be without prejudice because 'the court, having determined that it lacks jurisdiction over the action, is *incapable* of reaching a disposition on the merits of the underlying claims.'" (emphasis in original) (quoting *Brereton v. Bountiful City Corp.,* 434 F.3d 1213, 1216 (10th Cir. 2006)).